IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| JAMI SCOTT, SHANNON SULANDER, JANNA STEWART, BRETT FREEMAN, RACHEL ROYER, JOEY LEWIS, KORRI CULBERTSON and BRUCE McCONNELL, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 5:22-cv-163-KDB-DCK |
| v. | ) ) | |
| SYNEOS HEALTH, LLC, | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS
Fed. R. Civ. P. 12(b)(1), (3), and (6); 9 U.S.C. §§ 3-4

Defendant Syneos Health, LLC ("Syneos"), respectfully files this Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Rules 12(b)(1), (3), and (6) of the Federal Rules of Civil Procedure and 9 U.S.C. §§ 3-4 for failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction, and improper venue.

## INTRODUCTION

Syneos is an end-to-end integrated biopharmaceutical solutions organization that combines world-renowned clinical research and commercialization capabilities with today's advanced science, business, and data technologies designed to make possible real advances in biopharmaceutical research and development. Syneos contracts with third-party pharmaceutical manufacturers to place sales representatives in the field to promote and sell biopharmaceutical products and medical devices. Syneos' inspiring *Vision* of "shortening the distance from lab to

1

life" and **Mission** of "helping our customers improve and accelerate the delivery of therapies that impact health worldwide" lays the foundation on which Syneos operates every day.

The COVID-19 pandemic has posed an unprecedented challenge for our country and a grave threat to the health and safety of lives worldwide.[1] Even in completely healthy individuals, COVID-19 can be fatal. Thankfully, vaccines are a safe and highly effective means of preventing severe disease and death from COVID-19. According to a recent study, COVID-19 vaccinations prevented at least 27 million infections, 1.6 million hospitalizations, and 235,000 deaths among American adults in the first nine months they were available.[2]

After initially considering alternatives to a vaccine requirement, Syneos ultimately determined that neither regular testing nor natural immunity are adequate long-term alternatives to vaccination. It also became clear that having unvaccinated individuals on-site would expose countless employees and third parties, including Syneos' customers (many of whom *required* Syneos to staff their projects *only* with vaccinated Syneos employees), to the risk of death and serious injury from COVID-19. Accordingly, implementing a mandatory COVID-19 vaccination policy was a natural and necessary extension for Syneos, given its Vision and Mission and pre-existing focus on maintaining strict COVID-19 safety protocols throughout the pandemic.

In the instant lawsuit, the Plaintiffs consist of eight former Syneos employees who sought and were granted temporary religious exemptions to Syneos' vaccine requirement. When the exemptions were temporarily granted, none of the eight were promised indefinite accommodation

---

[1] Helen Branswell, *COVID-19 overtakes 1918 Spanish flu as the deadliest disease in American History*, STAT, (Sept. 20, 2021),https://www.statnews.com/2021/09/20/covid-19-set-to-overtake-1918-spanish-flu-as-deadliest-disease-in-american-history/.
[2] Alexia Couture et al., *Estimated Number of COVID-19 Infections, Hospitalizations, and Deaths Prevented Among Vaccinated Persons in the US, December 2020 to September 2021*, JAMA NETWORK OPEN, (July 6, 2022), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2793913.

2

– nor do they allege as much. Syneos ultimately determined that indefinite accommodations would place an undue hardship on Syneos. Syneos then gave these former employees additional time to choose either vaccination or separation. The eight Plaintiffs chose separation.

The Plaintiffs bring claims for (1) religious discrimination under Title VII of the Civil Rights Act, (2) retaliation under Title VII, (3) hostile work environment, (4) common law fraud, and (5) unfair and deceptive trade practices under Chapter 75 of North Carolina's General Statutes. All of these claims are baseless and Syneos is confident that it will prevail before trial. However, the claims for fraud and unfair and deceptive trade practices (Counts IV and V, respectively) fail to state a claim as a matter of law and should be dismissed at the onset. Finally, Plaintiffs Jami Scott, Brett Freeman, and Rachel Royer all executed enforceable arbitration agreements and should be dismissed from this matter entirely.

## SUMMARY OF RELEVANT ALLEGATIONS[3]

### General Allegations

On March 24, 2021, Syneos announced it would not immediately require employees to obtain a COVID-19 vaccine as a requirement to return to in-person work. [D.E. 2 at ¶ 19]. At that time, employees could return to their in-person field work without restrictions and without vaccination. [*Id*. at ¶ 18]. However, on September 2, 2021, as vaccines became more widely available, Syneos announced a vaccine mandate, with options for religious and medical exemptions. [*Id*. at ¶ 22]. Plaintiffs do not allege that Syneos promised unconditional exemptions

---

[3] Defendant moves for partial dismissal pursuant to Rule 12(b)(6), which requires the Court to accept as true all well-plead allegations. Plaintiffs' allegations are set forth herein without rebuttal or denial. Defendant, however, strongly denies that any unlawful actions occurred and looks forward to the opportunity to prove the falsity of the allegations.

or that any accommodations would be indefinite. [*Id*.]. Syneos set an initial deadline of October 22, 2021 to either receive a full vaccination or file an exemption request. [*Id*.].

Syneos informed its employees as early as October 6, 2021 that requests for exemptions, or even approved exemptions, would not be determinative of their employment status and would not necessarily lead to indefinite accommodations. [*Id*. at ¶ 25]. Instead, Syneos made clear that it would still need to conduct a hardship analysis to determine whether the approved exemptions could be accommodated. [*Id*.]. Plaintiffs never allege that Syneos promised that all exemptions would be accommodated indefinitely. [*Id*. at ¶¶ 22, 25]. In fact, Plaintiffs admit that the preliminary approval was explained as an "interim accommodation." [*Id*. at ¶¶ 121-22].

Following its hardship analysis, on December 9, 2021, Syneos informed certain employees with approved religious and medical exemptions – "interim accommodations" – that indefinite accommodations could not be granted, as continued accommodations would impose an undue hardship on Syneos due to job responsibilities that required extensive in-person contact with colleagues, client personnel, and healthcare providers. [*Id*. at ¶¶ 25, 32]. These employees were given until January 31, 2022 to become vaccinated or find a position that did not require vaccination. [*Id*. at ¶ 32].

<u>Arbitration Agreements of Plaintiffs Scott, Freeman, and Royer</u>

When Plaintiffs Scott, Freeman, and Royer ("Arbitration Plaintiffs") began their employment with Syneos, they were given unique, password-protected access to Syneos' Peoplefluent platform to review and electronically sign various employment-related documents, including the Mutual Arbitration Agreement ("Agreement"), which was an express condition of

their employment. [Trucks Decl., Exhibit A at ¶¶ 6, 13, 15, Attachments 1, 3, and 5].[4] A detailed and technical description of the Peoplefluent platform is described in the declaration of Syneos' Director of Global Human Resources Shared Services, Jennifer Trucks. [*Id*. at ¶¶ 13-19].

Each Arbitration Plaintiff electronically executed the Agreement through the Peoplefluent platform as a condition of their employment. [*Id*. at ¶¶ 30-32]. The Agreement unambiguously requires the disputes brought by Arbitration Plaintiffs to be decided through binding arbitration. [*Id*. at Attachments 1, 3, 5 at ¶ 1 (pp. 10, 18, 26)].

However, despite signing the Agreement at the time of hire, Arbitration Plaintiffs filed the present action against Syneos, bringing claims against Syneos for discrimination, retaliation, hostile work environment, fraud, and unfair and deceptive trade practices. [D.E. 2]. Since the filing of the Amended Complaint, the undersigned counsel for Syneos has requested that Arbitration Plaintiffs voluntarily dismiss themselves from the matter and refer their claims to arbitration, including providing proof that Arbitration Plaintiffs accepted the Agreement. [Exhibit B, Email Correspondence to Counsel for Plaintiffs]. Arbitration Plaintiffs have refused.

<u>Plaintiff Jami Scott</u>

Plaintiff Scott began her second round of employment with Syneos on March 15, 2021 as a Field Reimbursement Manager. [D.E. 2 at ¶¶ 69-70].

Plaintiff Scott alleges that she submitted a religious exemption request to the COVID-19 vaccination requirement, which was temporarily approved on October 21, 2021. [*Id*. at ¶ 74]. She does not allege that she was promised an accommodation, let alone an indefinite accommodation

---

[4] On a motion to dismiss under Rule 12(b)(1) and (3), which is the proper standard here (*see* n.10, below), the Court is permitted to consider evidence outside the pleadings. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365-66 (4th Cir. 2012).

or indefinite employment. [*Id*. at ¶¶ 69-93] She does not allege that she relied on any potential, ongoing, or future accommodation in any way. [*Id*.]

Plaintiff Scott alleges her employment was terminated on January 31, 2022. [*Id*. at ¶ 90].

### Plaintiff Shannon Sulander

Plaintiff Sulander began working for Syneos on July 27, 2020. [*Id*. at ¶ 94]. Starting in June 2021, Plaintiff Sulander alleges she had to attend meetings virtually due to her unvaccinated status. [*Id*. at ¶¶ 98-99, 101-02]. On September 21, 2021, she alleges she submitted a request for a religious exemption to the vaccination requirement, which was temporarily approved on October 21, 2021. [*Id*. at ¶¶ 104, 106]. She does not allege that she was promised an accommodation, let alone an indefinite accommodation or indefinite employment. [*Id*. ¶¶ 94-115] She does not allege that she relied on any potential, ongoing, or future accommodation in any way. [*Id*.]

In addition to the December 9, 2021 email informing all unvaccinated and exempted employees of their need to become vaccinated, Plaintiff Sulander alleges her supervisor reminded her on December 16, 2021 that her job was in jeopardy unless she received the vaccine. [*Id*. at ¶ 108]. Plaintiff Sulander alleges she then submitted a medical exemption request on January 7, 2021, which was temporarily approved on January 14, 2021. [*Id*. at ¶ 109].

Plaintiff Sulander alleges she was advised that her employment would be terminated if she did not receive the vaccine. [*Id*. at ¶ 110]. She alleges did not become vaccinated by the January 14, 2022 deadline and her employment was terminated. [*Id*. at ¶ 112].

### Plaintiff Janna Stewart

Plaintiff Stewart was employed by Syneos part-time as a Flex-Representative. [*Id*. at ¶ 116]. Plaintiff Stewart alleges she submitted a request for a religious exemption on September 14, 2021, which was temporarily approved September 22, 2021. [*Id*. at ¶¶ 119-20]. She does not

allege that she was promised an accommodation, let alone an indefinite accommodation or indefinite employment. [*Id.* at ¶¶ 116-134] She does not allege that she relied on any potential, ongoing, or future accommodation in any way. [*Id.*]

After the December 9, 2021 communication informing all exempt, unvaccinated employees of the undue hardship, Plaintiff Stewart alleges she was asked to declare her vaccination intention by January 25, 2022. [*Id.* at ¶¶ 125, 127]. Plaintiff Stewart allegedly responded that she did not intend to receive the COVID-19 vaccine and her employment was terminated on January 25, 2022. [*Id.* at ¶ 129].

<u>Plaintiff Brett Freeman</u>

Plaintiff Brett Freeman was employed by Syneos as a Field Reimbursement Manager. [*Id.* at ¶ 135].

After contracting COVID-19, Plaintiff Freeman alleges he sought a medical exemption to the vaccination requirement on October 19, 2021. [*Id.* at ¶ 140]. He also alleges he submitted a request for religious exemption. [*Id.* at ¶ 141]. On November 5, 2021, he alleges he was granted a temporary medical exemption to December 20, 2021. [*Id.* at ¶ 145]. He alleges he was then granted a temporary religious exemption on December 7, 2021. [*Id.* at ¶ 148]. He does not allege that he was promised an accommodation, let alone an indefinite accommodation or indefinite employment. [*Id.* at ¶¶ 135-153] He does not allege that he relied on any potential, ongoing, or future accommodation in any way. [*Id.*]

On December 10, 2021, Plaintiff Freeman alleges he was informed that his exemption could not be accommodated indefinitely and that he needed to become vaccinated by January 14, 2022. [*Id.* at ¶ 149]. Plaintiff Freeman alleges his employment was terminated on January 28, 2022. [*Id.* at ¶ 151].

7

<u>Plaintiff Rachel Royer</u>

Plaintiff Royer was hired as a Hematology Clinical Account Specialist on June 1, 2021. [*Id*. at ¶ 154]. Plaintiff Royer alleges she sought a religious exemption to the COVID-19 vaccination requirement, which was temporarily approved on October 6, 2021. [*Id*. at ¶¶ 158-59]. She does not allege that she was promised an accommodation, let alone an indefinite accommodation or indefinite employment. [*Id*. at ¶¶ 154-165] She does not allege that she relied on any potential, ongoing, or future accommodation in any way. [*Id*.]

After being informed of the December 9, 2021 decision on her accommodation, and after her refusal to become vaccinated, Plaintiff Royer alleges her employment was terminated on January 31, 2022. [*Id*. at ¶ 162].

<u>Plaintiff Joey Lewis</u>

Plaintiff Lewis alleges he submitted a religious exemption request on September 20, 2021, which was temporarily approved on September 30, 2021. [*Id*. at ¶ 168]. He does not allege that he was promised an accommodation, let alone an indefinite accommodation or indefinite employment. [*Id*. at ¶¶ 166-178] He does not allege that he relied on any potential, ongoing, or future accommodation in any way. [*Id*.]

Presumably, although not specifically alleged, Plaintiff Lewis' employment was terminated in late January 2022. [*Id*. at ¶ 173].

<u>Plaintiff Korri Culbertson</u>

Plaintiff Culbertson alleges she submitted a religious exemption request on September 20, 2021, which was temporarily approved on September 30, 2021. [*Id*. at ¶ 181] She does not allege that she was promised an accommodation, let alone an indefinite accommodation or indefinite

8

employment.  [*Id*. at ¶¶ 179-194]  She does not allege that she relied on any potential, ongoing, or future accommodation in any way.  [*Id*.]

After being informed that her exemption could not be accommodated, Plaintiff Culbertson alleges she attempted to secure another position with Syneos that did not require vaccination.  [*Id*. at ¶¶ 185, 189].  Plaintiff Culbertson does not allege whether this attempt was successful.  [*Id*.].  Presumably, although not specifically alleged, Plaintiff Culbertson's employment was terminated in late January 2022.  [*Id*. at ¶ 190].

During the hiring process with another employer, Plaintiff Culbertson alleges that her internal Syneos file contained a "consider" label that indicated an "investigation had found something that the prospective employer may want to consider before proceeding with the hiring process."  [*Id*.].  She does not allege whether this impacted her employment or potential employment with the other company in any way.  [*Id*.].

<u>Plaintiff Bruce McConnell</u>

Plaintiff McConnell began his employment with Syneos on February 12, 2020 as a Professional Sales Representative.  [*Id*. at ¶ 195].  He alleges he requested a religious exemption request on September 16, 2021, which was temporarily approved on October 29, 2021.  [*Id*. at ¶¶ 196-97].  He does not allege that he was promised an accommodation, let alone an indefinite accommodation or indefinite employment.  [*Id*. at ¶¶ 195-201]  He does not allege that he relied on any potential, ongoing, or future accommodation in any way.  [*Id*.]

Following the December 9, 2021 communication informing all unvaccinated employees that their exemptions could not be accommodated indefinitely, Plaintiff McConnell alleges he was directed to upload proof of vaccination or face separation.  [*Id*. at ¶ 198].  Plaintiff McConnell

9

alleges he did not receive a COVID-19 vaccine and his employment was terminated on January 31, 2022. [*Id.* at ¶ 199].

## SUMMARY OF ARGUMENT

To state a claim for fraud, Plaintiffs must allege a specific misrepresentation, made by Syneos, which they actually relied on to their detriment. To survive a motion to dismiss, both the misrepresentation and the reliance must be alleged with particularity. Plaintiffs fail to allege that Syneos made any kind of representation that it would accommodate a vaccine exemption permanently or that the at-will Plaintiffs were entitled to a defined term of employment. They also fail to specifically allege any way in which they actually relied on any alleged misrepresentation. Accordingly, Plaintiffs' claim for common law fraud (Count IV) fails as a matter of law.

Plaintiffs also allege that the above "misrepresentations" and the "coercive uses of the employer role"[5] constitute unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. [*Id.* at ¶ 228]. However, North Carolina courts have consistently held that Chapter 75 is not applicable to employment disputes between an employer and employee. Plaintiffs' claim for unfair and deceptive trade practices (Count V) should be dismissed as a matter of law.

Finally, Plaintiffs Jami Scott, Brett Freeman, and Rachel Royer all executed enforceable arbitration agreements. These agreements require that any disputes arising out of their employment be resolved through binding, private arbitration. Because all of the causes of action brought on behalf of these three plaintiffs arose from their employment, their claims must be stayed or, in the alternative, they should be dismissed from this suit entirely.

---

[5] The Amended Complaint fails to identify any alleged actual conduct supporting this hyperbolic description.

## I. Plaintiffs' Claims for Fraud (Count IV) and Unfair and Deceptive Trade Practices (Count V) Should Be Dismissed.

### A. Plaintiffs' Fraud Claim (Count IV) Fails as a Matter of Law.

Plaintiffs fail to allege an actual misrepresentation. Mere notice pleading is insufficient to state a claim for fraud. Instead, Plaintiffs must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also* N.C. R. Civ. P. 9(b).

To state a claim for fraud, a plaintiff must allege an arm's length transaction where there was "a knowing misrepresentation of existing fact, made with intent to deceive, which the other party reasonably relies on to his deception and detriment." *Briggs v. Mid-State Oil Co.*, 53 N.C. App. 203, 207, 280 S.E.2d 501, 504 (1981)[6]. Combined with Rule 9's heightened pleading standard, this means a plaintiff must allege the time, place, and content of the fraudulent representation, the identity of the person making the representation, and what was obtained as a result of the fraudulent acts or representation. *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

---

[6] A federal court exercising supplemental jurisdiction applies the substantive law of the forum state, including the state's choice of law rules. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623–24 (4th Cir. 1999). For common law fraud claims, North Carolina applies the substantive law of the state where the injury is alleged to have occurred. *Stetser v. TAP Pharm. Prods., Inc.*, 165 N.C. App. 1, 16, 598 S.E.2d 570, 581 (2004). Because Syneos' principal office is within the *Eastern District* of North Carolina, (*see* Exhibit C, Syneos Health, LLC 2022 Limited Liability Company Annual Report), the only way for venue to be proper in this district is if Plaintiffs allege "the unlawful employment practice" occurred in North Carolina. *See* 42 U.S.C. § 2000e-5(f)(3) (venue under Title VII is appropriate "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed."). Accordingly, this memorandum will apply North Carolina law to the analysis of Plaintiffs' fraud claim. *See also Bardes v. Massachusetts Mut. Life Ins. Co.*, 932 F. Supp. 2d 636, 638-39 (M.D.N.C. 2013) (applying North Carolina law to a common law fraud claim on a Rule 12(b)(6) motion to dismiss when the factual record is insufficient to resolve choice-of-law issues with finality).

11

Plaintiffs appear to allege fraud in one instance, and perhaps a second. First, that Syneos committed fraud by initially stating it would grant Plaintiffs' vaccine exemption requests, and later determining it would not grant an indefinite accommodation. [D.E. 2 at ¶ 221]. Second, that Syneos placed a "consider"[7] notation on at least one plaintiff's personnel file and that it may have done the same on other plaintiffs' files. [*Id*. at ¶ 225]. Both claims fail as a matter of well-settled law.

### 1. *Plaintiffs fail to allege any particular representation.*

It is well established in this state that "a mere promissory representation will not support an action for fraud." *Braun v. Glade Valley Sch., Inc.*, 77 N.C. App. 83, 87, 334 S.E.2d 404, 407 (1985) (citing *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 255, 266 S.E.2d 610, 616 (1980)). An implied promise is not a representation for purposes of a common law fraud claim. *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447–48 (1997). Instead, "[t]he representation must be definite and specific…." *Lillian Knitting Mills Co. v. Earle*, 237 N.C. 97, 105, 74 S.E.2d 351, 356 (1953) (citing *Leggett Elec. Co. v. Morrison*, 194 N.C. 316, 139 S.E. 455 (1927). "In the absence of a misrepresentation, there can be no actionable fraud." *Am. Imps., Inc. v. G. E. Emps. W. Region Fed. Credit Union*, 37 N.C. App. 121, 125, 245 S.E.2d 798, 801 (1978) (citing *Ragsdale*, 286 N.C. at 138, 209 S.E.2d at 500).

While North Carolina courts have held that an at-will employee is not *per se* barred from bringing a fraud claim as a matter of law, *Liggett Grp., Inc. v. Sunas*, 113 N.C. App. 19, 31, 437 S.E.2d 674, 681 (1993), such a claim has only survived when the employer made a specific promise

---

[7] The Amended Complaint appears to allege that Syneos inserted this word in a post-employment file(s) to discourage future employers from hiring a plaintiff. It is unclear how this alleged conduct would amount to a fraudulent representation, but the following argument addresses this allegation nonetheless as arguably plead to be a "fraud" of some manner. The claim fails as a matter of law.

Case 5:22-cv-00163-KDB-DCK   Document 10   Filed 12/27/22   Page 12 of 27

to the employee that induced the employee to take some detrimental action. *See id.* at 30-31, 437 S.E.2d at 681 (employee's fraud claim survived despite his at-will employment status because he alleged the employer promised to rehire him if he took early retirement); *Walton v. Carolina Tel. & Tel. Co.*, 93 N.C. App. 368, 380, 378 S.E.2d 427, 434 (1989) (employee's fraud claim survived despite his at-will employment status because he alleged the defendant convinced him to quit his job by promising him seniority and service benefits). Plaintiffs do not allege any such promise here.

Here, Plaintiffs fail to allege an actual false representation of a material fact. Plaintiffs allege that harm occurred to them when their employment was terminated because of Syneos' ultimate decision not to indefinitely accommodate their approved exemptions. Therefore, to sustain a claim for common law fraud, they must particularly allege that Syneos expressly represented to the Plaintiffs that their exemption would be indefinitely accommodated, no matter the results of Syneos' hardship analysis, and that Syneos knew at the time of the representation that it was false.

Such an allegation is entirely absent from the Amended Complaint. Instead, Plaintiffs allege that Syneos informed them as early as October 6, 2021 that it may be unable to accommodate exemptions due to a potential hardship. [D.E. 2 at ¶ 25]. Purporting to quote Syneos, Plaintiffs even categorize any initial exemptions as an "interim accommodation." [*Id*. at ¶¶ 121-22]. Plaintiffs allege that their requests for religious exemptions to the vaccine requirement were temporarily approved while Syneos underwent an undue hardship analysis. Plaintiffs fail to allege

any promise of a permanent or indefinite accommodation when the undue hardship analysis was completed.[8]

Dismissal of the supposed "consider" notation is even simpler. Plaintiffs do not allege an express – or even implied – promise *not* to include a "consider" notation on their files. Without a representation, there can be no misrepresentation, and no fraud claim. None of the Plaintiffs other than Plaintiff Culbertson even allege this notation with any particularity whatsoever.

2. *Plaintiffs fail to allege any reliance.*

Even if Plaintiffs alleged a misrepresentation – which they do not – they also fail to allege detrimental reliance on that representation with particularity. *See Terry*, 302 N.C. at 85, 273 S.E.2d at 678 (under Rule 9, requiring fraud allegations to specifically allege "what was obtained as a result of the fraudulent act or representation."). The only "reliance" alleged in Plaintiffs' fraud pleading are vague allegations and rote recitations of the claim's element, insufficient to meet Rule 9's heightened pleading standard. Plaintiffs only allege:

- "Yet, Syneos claimed notwithstanding an 'undue hardship,' with full intent that the employees herein rely on this representation." [*sic*] [*Id*. at ¶ 221].

- "All employees relied on these promises, to their detriment and damage." [*Id*. at ¶ 224].

- "Syneos made the representations…with the full expectation and intention that the plaintiffs herein would rely on said false statements. Syneos intended to induce reliance and plaintiffs did reasonably rely on the false statements to the damage of themselves. Said damage took the form of being dissuaded from seeking timely legal advice to protect their jobs prior to the vaccinate or terminate letters of September, 2021 and December, 2021, [*sic*] and of failing due to their reasonable reliance on the false representations to seek other employment in order to avoid losing income." [*Id*. at ¶ 225]

---

[8] Even if Plaintiffs particularly alleged a promise to conduct an undue hardship analysis in good faith – which they do not – such an allegation would not be actionable. *See Claggett*, 126 N.C. App. at 609-10, 486 S.E.2d at 447 (1997) (affirming dismissal of fraud claim alleging an implied promise to follow tenure procedures in good faith).

14

In *Briggs*, 53 N.C. App. 203, 280 S.E.2d 501, the North Carolina Court of Appeals upheld the trial court's grant of summary judgment in favor of the defendant on the plaintiffs' fraud claim. The undisputed evidence of record showed: the plaintiffs were at-will employees with indefinite terms of employment; the plaintiffs were promised a severance pay if they were terminated; when their jobs were terminated, they were denied severance pay. *Briggs*, at 209, 280 S.E.2d at 505. The court held that the plaintiffs failed to allege in their complaint, and failed to show in depositions, that they had relied in any way on the alleged misrepresentation. *Id*. At most, a promise of severance may have caused them to forego looking for or accepting a new job, *but no specific allegation or evidence showed that the plaintiffs gave up either of those actions as a result of the severance pay program*. *Id*.

Plaintiffs allege vague categories of reliance – "dissuaded from seeking timely legal advice" and "failing…to seek other employment" – but the Amended Complaint lacks any specific allegations of reliance. Not a single Plaintiff alleges an instance in which he or she considered seeking legal advice and thought, because Syneos offered to consider religious exemption requests, there was no need. Not a single Plaintiff claims he or she refused alternative work because they were promised indefinite accommodation or indefinite employment. Nor could they make such an allegation because the Amended Complaint alleges that the Plaintiffs were advised as early as October 6, 2021 that requests for accommodation would require an undue hardship review. [D.E. 2 at ¶ 25]. *See e.g. Brandis v. Lightmotive Fatman, Inc.*, 115 N.C. App. 59, 64, 443 S.E.2d 887, 890 (1994) (reversing summary judgment on a fraud claim because the plaintiff *specifically* alleged he waived two other offers of employment and moved in reliance of an employment offer from defendant).

B.  Claims Under Chapter 75 (Count V) are Not Applicable to Employment Disputes.

Plaintiffs' claim for unfair and deceptive trade practices under Chapter 75 of North Carolina's General Statutes is similarly misguided. The Amended Complaint merely states, in conclusory fashion, "[t]he misrepresentations, omissions and coercive uses of the employer role in order to deprive certain employees of customary benefits and employment constitute unfair and deceptive acts or practices and/or unfair methodologies of competition on the part of Defendant Syneos." [D.E. 2 at ¶ 228]. Plaintiffs' allegations defeat their claim.[9]

It is well established that Chapter 75 does not apply to general employment relationships. Instead, this is a consumer protection law applicable to commercial and consumer transactions. *See Schlieper v. Johnson*, 195 N.C. App. 257, 267, 672 S.E.2d 548, 555 (2009); *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001) ("[T]he Act does not normally extend to run-of-the-mill employment disputes[.]"); *Wilson*, 157 N.C. App. 355 (dismissing a Chapter 75 action as "not contemplated" by the Act when a disgruntled former employee challenged his former employer's change to its bylaws to prevent him from serving on its board); *Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119–120 (1982), *review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982) (affirming dismissal of a Chapter 75 claim when the employee alleged he was

---

[9] Chapter 75 was not meant to encompass all business activities or all wrongdoings in a business setting but "was adopted to ensure that the original intent of the statute…was effectuated." *Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C. App. 355, 357–58, 578 S.E.2d 692, 694 (2003) (quoting *Threatt v. Hiers*, 76 N.C. App. 521, 523, 333 S.E.2d 772, 773 (1985), *disc. review denied*, 315 N.C. 397, 338 S.E.2d 887 (1986)). The original intent of the statute included:

> [T]o provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings *between buyers and sellers* at all level[s] of commerce be had in this State.

*Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (emphasis added).

16

discharged for seeking workers' compensation benefits). The undersigned has been unable to uncover any North Carolina appellate decision that extends Chapter 75 liability to standard employment disputes – let alone to an accommodation decision.

The instant case is a dispute between former employees and their former employer over whether the former employees' termination for noncompliance with a workplace policy was proper. Plaintiffs overtly allege that the Chapter 75 claim arises from "coercive uses of the employer role…." [D.E. 2 at ¶ 228]. Plaintiffs' admission that their allegations derive from a general employment relationship dispute, and not a consumer or commercial transaction, renders Chapter 75 inapplicable.

## II. Plaintiffs Jami Scott's, Brett Freeman's, and Rachel Rover's Claims Should Be Decided in Binding Arbitration.

Plaintiffs Jami Scott, Brett Freeman, and Rachel Royer ("Arbitration Plaintiffs") all executed enforceable Mutual Arbitration Agreements ("Agreement"), agreeing to resolve any claim relating to their employment with Syneos through binding arbitration. [Trucks Decl., Exhibit A at Attachment 1, 3, 5]. Accordingly, their claims should either be stayed pending the outcome of arbitration or, in the alternative, they should be dismissed from this claim entirely under Fed. R. Civ. P. 12(b)(1) and (3)[10].

---

[10] The Fourth Circuit requires motions to dismiss due to a binding arbitration agreement to be brought as Fed. R. Civ. P. 12(b)(3) motions to dismiss for improper venue. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 n.9 (4th Cir. 2012). Under Rule 12(b)(3), the burden is on Arbitration Plaintiffs to make a prima facie showing of proper venue. *Id*. at 366 (4th Cir. 2012).

A.     <u>Arbitration Plaintiffs' and Syneos' Agreements to Arbitrate the Claims in this Lawsuit Is Enforceable Under the FAA.</u>

Courts consistently adhere to the strong federal policy in favor of arbitration and arbitration agreements. *See, e.g., Gilmore v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991); *Austin v. Owens-Brockway Glass Container, Inc.,* 78 F.3d 875, 880-81 (4th Cir. 1996). One of the primary sources and expressions of the federal policy favoring arbitration is contained in the FAA. *See Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA reflects 'a liberal federal policy favoring arbitration agreements.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)).

Section 2 of the FAA states that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA's provisions are mandatory. Consequently, courts must compel arbitration when a valid arbitration agreement exists. *See* 9 U.S.C. § 3; *Adkins,* 303 F.3d at 500 ("[t]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' 9 U.S.C. § 3. This stay-of-litigation provision is mandatory."). "Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Mitchell v. HCL Am., Inc.,* No. 5:15-CV-565-FL, 2016 WL 3129176, at *13 (E.D.N.C. June 2, 2016) (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir. 2001)).

An arbitration agreement is enforceable under the FAA if it is (i) part of a contract or transaction involving interstate commerce and (ii) valid under general principles of contract law.

18

*See Adkins,* 303 F.3d at 500-01. As explained below, the agreement between Syneos and Arbitration Plaintiffs to arbitrate the claims at issue here satisfies both of these elements and therefore is enforceable under the FAA.

        i.    *Arbitration Plaintiffs' Employment Relationship with Syneos Involved Interstate Commerce.*

The FAA's reference to interstate commerce reflects Congressional intent to extend FAA coverage to the limits of federal power under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277-81 (1995). Accordingly, the determination of whether a transaction or contract "involves" interstate commerce requires an expansive construction of the term to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id.* A matter "involves" commerce under the FAA if it simply "affects" commerce – a standard commonly applied by courts to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id.* at 274. The United States Supreme Court reiterated all of the above points in *Circuit City v. Adams,* 532 U.S. 105 (2001).

Here, Plaintiff Scott worked for Syneos while in Texas [D.E. 2 at ¶ 69], Plaintiff Freeman resides in Oklahoma [*Id.* at ¶ 10], and Plaintiff Royer worked for Syneos in Minnesota [*Id.* at ¶ 154]. All three worked for Syneos, which is headquartered in North Carolina and operates a national (and international) network of locations. [Exhibit A at ¶ 3]. That these matters involve interstate commerce is indisputable.

        ii.    *The Agreement Is Valid and Enforceable Under General Principles of Contract Law.*

An arbitration agreement's validity is determined by reference to general principles of contract law. *See Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 685 (1996) (noting that "'state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues

19

concerning the validity, revocability, and enforceability of contracts generally'") (citation omitted). However, to the extent that state law carves out specific rules for arbitration agreements or other types of contracts that do not apply generally to all contracts, these rules are "inconsonant with, and [are] therefore preempted by, the federal law." *Id.* at 688.

"North Carolina has a strong public policy favoring the settlement of disputes by arbitration. . . . [North Carolina's] Supreme Court has held that where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." *Howard v. Oakwood Homes Corp.,* 134 N.C. App. 116, 118, 516 S.E.2d 879, 881, *writ denied, review denied,* 350 N.C. 832, 539 S.E.2d 288 (1999) (citations and quotations omitted).

The court in *Oakwood* provides good guidance on just how strong the public policy favoring arbitration is in North Carolina. In *Oakwood,* the employer implemented a program that required the company and its employees to submit any employment disputes to binding arbitration. *Oakwood,* 134 N.C. App. at 116. The employer provided employees with copies of the program, and instructed that an employee's decision to continue employment would constitute an agreement to be bound by the terms of the program. *Id.* The employer did not require employees to sign the agreement. *Id.* at 120. The court in *Oakwood* stated that the FAA imposed "no requirement that a written arbitration agreement be signed by the party to be charged, and it is sufficient that a party by act or conduct commits himself to the agreement." *Id. (*quoting *Real Color Displays, Inc. v. Universal Applied Technologies Corp.,* 950 F. Supp. 714 (E.D.N.C. 1997)). Further, the court held that because the employee received the program materials and voluntarily continued her employment with notice that the terms would be mutually effective, she was bound to arbitrate her employment claims. *Id.* at 120-121.

20

Here, the Agreement is valid and enforceable. Like other Syneos employees hired during the same timeframe, Syneos required Arbitration Plaintiffs to agree to submit employment-related grievances to arbitration as a condition of employment. Arbitration Plaintiffs expressly acknowledged receipt of, and agreement to, the Agreement.

In addition, the Agreement binds *both* Arbitration Plaintiffs and Syneos to arbitrate claims within its scope. These facts are more than sufficient to establish the Agreement's validity under both North Carolina and federal law. *See, e.g., Adkins,* 303 F.3d at 501; *Hightower v. GMRI, Inc.,* 272 F.3d 239, 243 (4th Cir. 2001) ("[U]nder North Carolina law, '[c]ontinued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent to the binding arbitration agreement contained therein'") (citation omitted).

In sum, the Agreement between Syneos and Arbitration Plaintiffs satisfies all of the requisite elements needed to be valid and enforceable. The only remaining question is whether Arbitration Plaintiffs' claims fall within the scope of the Agreement.

B.   The Claims Raised by Arbitration Plaintiffs Fall Squarely Within the Scope of the Agreement.

i.   *Applicable Standards Relating to the Interpretation of Arbitration Agreements.*

Under the strong federal policy favoring arbitration, it is well-settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25; *see also Adkins,* 303 F.3d at 500 ("'due regard must be given to the federal policy favoring arbitration…[therefore,] ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'") (citation omitted). Thus, a court should compel arbitration "unless it may be said with positive assurance that the arbitration

21

clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960).

Where, as here, a mandatory arbitration provision is broadly drafted, only an "express provision excluding a particular [claim] from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration" will remove such a claim from consideration by an arbitrator. *See AT&T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650 (1986). Application of these principles mandates that Arbitration Plaintiffs be required to pursue any and all of their purported claims against Syneos through binding arbitration, not this Court.

    ii.  *The Agreement Applies To Arbitration Plaintiffs' Claims.*

Arbitration Plaintiffs' claims are covered under the Agreement. First, Paragraph 1 of the Agreement outlines Covered Claims and specifically includes:

> all disputes, claims, complaints, or controversies ('Claims') that you have had in the past, have now, or at any time in the future may have, against the Company…arising out of and/or related to your…employment with the Company, and/or the termination of your employment with the Company…[including] claims for…discrimination and/or harassment, retaliation claims, and claims for failure to accommodate [and] claims for…wages…or any other form of remuneration or pay;…any other claim under any…state…statute…or common law…arising out of and/or related to…your employment with the company, and/or the termination of your employment[.]

[*See* Exhibit A at Attachments 1, 3, and 5 at ¶ 1 (pp. 10, 18, 26)]. Accordingly, on its face, the Agreement covers any dispute arising out of or relating to Arbitration Plaintiffs' employment, including any claims of termination, discrimination, failure to accommodate, harassment, retaliation, and common law and state statutory claims. Arbitration Plaintiffs' claims fall squarely within these categories of Covered Claims. Moreover, Paragraph 1 specifically enumerates that Title VII claims are subject to final and mutually-binding arbitration. (*See id*.)

C.    The Court Should Stay This Case Pending the Outcome of Arbitration Between the Parties or, in the Alternative, Dismiss the Case for Lack of Subject Matter Jurisdiction and Improper Venue.

Section 3 of the FAA states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

9 U.S.C. § 3.  This provision requires the trial court to stay judicial proceedings where the issue presented is subject to arbitration under an agreement to arbitrate. The FAA leaves the trial court no discretion on this point; rather, it mandates that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists.  9 U.S.C. §§ 3, 4.  Accordingly, under § 3 of the FAA, this lawsuit should be stayed and the court should issue an order compelling arbitration.

Alternatively, because Arbitration Plaintiffs and Syneos have agreed to arbitration, the court should dismiss them from this lawsuit for lack of subject matter jurisdiction or improper venue.  "[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709-10 (4th Cir. 2001).  *See also, Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Collie v. Wehr Dissolution Corp.,* 345 F. Supp. 2d 555, 562-63 (M.D.N.C. 2004) (dismissing, pursuant to Rule 12(b)(1), claims within the scope of an arbitration agreement).

Here, where all of the claims raised by Arbitration Plaintiffs in this lawsuit fall within the scope of valid and enforceable arbitration agreements, the Amended Complaint should be dismissed under Rule 12(b)(1) or (3).

D. The Court Should Award Syneos Its Fees and Costs Incurred in Filing this Motion.

Pursuant to the terms of the Agreement, Arbitration Plaintiffs were bound to participate in arbitration and were contractually prohibited from alleging their claims in any other forum. [*See* Exhibit A at Attachments 1, 3, and 5 at ¶ 1]. Further, after Arbitration Plaintiffs initiated this lawsuit, counsel for Syneos reminded counsel for Arbitration Plaintiffs of their contractually-binding obligation to arbitrate their claims. [*See* Email Correspondence to Counsel for Plaintiffs, Exhibit B]. Nonetheless, Arbitration Plaintiffs refused to withdraw or dismiss their action in favor of arbitration.

While the American Rule for costs and fees requires each party to bear its own costs for litigation, this rule "is subject to certain limited exceptions derived from the courts' historical powers of equity." *Teamsters Local Union No. 505 v. Am. Ben. Corp.*, No. 3:09-0208, 2010 WL 1417808, at *2 (S.D. W.Va. Apr. 2, 2010) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975); *United Food & Commercial Workers v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989)). Courts in the Fourth Circuit have awarded attorneys' fees and costs where a party's refusal to submit all matters to arbitration was "without justification." *Id.* (citing *Marval*, 876 F.2d at 350).

Here, Arbitration Plaintiffs "acted without justification when [they] refused to submit all matters to arbitration and delayed those proceedings…, greatly hindering the primary purpose of arbitration – 'the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.'" *Id.* (citing *Raymond James Fin. Servs., Inc. v. Bishop*, 59 F.3d 183,

190 (4th Cir. 2010)). Arbitration Plaintiffs' failure to dismiss themselves from the Amended Complaint in light of the unambiguously binding terms of the Agreement, in conjunction with Syneos' reminder that arbitration was the required forum, was without justification and was not based on any reasonable chance of success.

"In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a reasonable chance to prevail." *Chauffeurs, Teamsters, & Helpers v. Stoehmann Bros.*, 625 F.2d 1092, 1094 (3d Cir. 1980). Because Arbitration Plaintiffs' resistance to binding arbitration was wholly without merit and unsupported by applicable law, Syneos is entitled to its attorneys' fees associated with this Motion.

If the Court grants this Motion and Syneos' request for sanctions, counsel for Syneos will submit an affidavit supporting the amount of the award, to be calculated by the lodestar method. It is not possible to calculate the total amount at this time, as Syneos anticipates further briefing and potential argument on this issue.

## CONCLUSION

Defendant respectfully moves the Court to dismiss Plaintiffs' claims for fraud (Count IV) and unfair and deceptive trade practices (Count V) under Fed. R. Civ. P. 12(b)(6) and to dismiss Plaintiffs Scott, Freeman, and Royer from the matter entirely under Fed. R. Civ. P 12(b)(1) and (3).

Respectfully submitted, this 27th day of December, 2022.

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

/s/  Jefferson P. Whisenant
Robert A. Sar (N.C.  Bar No. 22306)
Jefferson P. Whisenant (N.C. Bar No.: 51064)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: Bob.Sar@ogletree.com
E-mail: Jefferson.Whisenant@ogletree.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the forgoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, and I hereby certify that I have sent the document to the following via U.S. Mail:

Krispen Culbertson, Esq.
Culbertson & Associates
315 Spring Garden Street
Greensboro, NC 27401

Larry L. Crain, Esq.
Emily Castro, Esq.
Crain Law Group, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027

*Attorneys for Plaintiffs*

This the 27th day of December, 2022.

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

/s/  Jefferson P. Whisenant
Robert A. Sar (N.C. Bar No. 22306)
Jefferson P. Whisenant (N.C. Bar No.: 51064)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: Bob.Sar@ogletree.com
E-mail: Jefferson.Whisenant@ogletree.com

*Attorneys for Defendant*

27